UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROSEMARIE SALMASSI e. Kfr.,

               Plaintiff,          08 Civ. 4892

  -against-                        OPINION

EURO-AMERICA CONTAINER LINE LTD.,

               Defendant.

------------------------------------X



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/10

A P P E A R A N C E S:

    Attorneys for Plaintiff

    HILL RIVKINS LLP
    45 Broadway, 15th Floor
    New York, NY  10006-3739
    By:  Lauren E. Komsa, Esq.

    Attorneys for Defendant

    BURKE & PARSONS
    100 Park Avenue, 30th Floor
    New York, NY  10017-5533
    By:  Keith W. Heard, Esq.
         Michael J. Walsh, Esq.

**Sweet, D.J.**

Defendant Euro-America Container Line Ltd. ("EACL") has moved pursuant to Rules 55(c), 60(b)(1), 60(b)(4) and 60 (b)(6) of the Federal Rules of Civil Procedure to vacate the default judgment of June 17, 2009 obtained by Plaintiff Rosemarie Salmassi e. Kfr. ("Salmassi") in the amount of $262,636.71 (the "Default Judgment"). Upon the facts and conclusions set forth below, the motion is granted without conditions.

**Prior Proceedings**

On May 28, 2008, Salmassi filed its Complaint with this Court seeking damages in the amount of $235,000 arising out of the January 18, 2008 issuance by EACL, through its agent Euro-Pac Shipping, Inc. ("Euro-Pac Inc."), of bill of lading LA1425, under which EACL agreed to transport two 2008 Mercedes Benz automobiles safely from the Port of New York to Busan, Korea. The Complaint alleged that the Mercedes automobiles were delivered to the Defendant in good order and condition, but that the two vehicles were missing when the container was offloaded in Korea. Failing to serve EACL in Hong Kong, on January 20,

1

2009, Salmassi served Harry Yu ("Yu") of Euro-Pac Inc., who provided up-to-date and accurate address information for EACL. On April 1, 2009, Salmassi received notice that EACL had properly been served and on May 6, 2009, a Proof of Service was filed with the Court.

On June 11, 2009, Salmassi filed its Motion for a Default and on June 17, 2009, the Court issued the Default Judgment.

Salmassi sought to collect on the Default Judgment by seeking payment in connection with a bond Navigator's Insurance Company ("NIC") obtained by EACL in the amount of $75,000. On or about January 8, 2010, counsel for NIC informed Salmassi that the matter had been turned over to EACL's Hong Kong counsel for handling. On February 2, 2010, EACL filed the instant motion.

On October 3, 2008, Salmassi commenced legal proceedings against EACL in the High Court of the Hong Kong Special Administrative Region, Court of First Instance (the "Hong Kong Proceeding") seeking recovery for the alleged breach of bills of lading LA1425 and LA1426 — one of which was the same bill of lading at issue in this action

(LA1425) — and asserting the claim asserted in this action based on EACL's bill of lading, which reads as follows:

> The contract evidenced by or contained in this Bill of Lading is governed by the law of Hong Kong and any claim or dispute arising hereunder or in connection herewith shall be determined by the Courts in Hong Kong and no other Court.
>
> By a Bill of Lading issued at Los Angeles, U.S.A. numbered LA 1425 and dated 18 January 2008 (the "Bill of Lading"), the Defendant, by its servants or agents, acknowledged shipment on board the vessel "HANJIN ELIZABETH" (the "Vessel") [of] two Mercedes Benz S550L Motor Cars (Ch-Nos.: WDDNG86X48A196847 and WDDNG71X58A184157) at New York in good order and condition (the "Cargo") for carriage to and delivery at Busan, Korea for reward.

Paragraph 5 of the Statement of Claim in the Hong Kong Proceeding provided vehicle identification numbers and alleged values that match the information set forth in the two invoices attached to the Complaint in this action. Also, the damages alleged in are the same as those alleged in paragraph 11 of the Complaint in this action.

Upon receipt of the pleadings in the Hong Kong action, Chan Chi Keung ("Chan") of Euro-Pac Ltd. reported the filing of the lawsuit there to the People's Insurance Company of China ("PICC"), and PICC appointed the Hong Kong law firm of Stephenson Harwood & Lo to defend and protect EACL's interests. On November 19, 2008, Stephenson Harwood

& Lo filed a Defence in the Hong Kong lawsuit on behalf of EACL.

On November 7, 2008, Stephenson Harwood & Lo arranged for a payment to be made into Court in Hong Kong in the amount of $12,000 as the highest amount plaintiff could possibly recover from EACL in that proceeding and later determined that the maximum amount of EACL's liability should be limited, based on the gold value of 100 pounds sterling per package under the Hague Rules of 1924, in accordance with Clause 6(1)(A) of EACL's bill of lading. On March 31, 2009, Stephenson Harwood & Lo arranged for an additional payment to be made into Court on behalf of EACL in the amount of $1,400, bringing the total amount on deposit with the Court in Hong Kong to $13,400.

The instant motion to vacate the Default Judgment was marked fully submitted on February 26, 2010.

**Facts**

EACL, a Hong Kong corporation, is a non-vessel operating common carrier ("NVOCC") of goods by water for hire in the trade between the United States and various

4

locations in the Far East, including Korea.[1]  It does not have an office in the United States but instead operates through Euro-Pac Ltd., its general agent in Hong Kong. Euro-Pac Ltd. then uses its sub-agent, Euro-Pac Inc., which is located in City of Industry, California, for certain services.  EACL does not have an office, employees, bank account or other property in the State of New York. Accordingly, EACL contends this Court lacks personal jurisdiction over it.

Salmassi shipped a 40-foot container "said to contain" two new Mercedes Benz automobiles for transportation on the vessel HANJIN ELIZABETH from the Port of New York to the port of Busan, Korea, pursuant to bill of lading LA1425, issued in Los Angeles by Euro-Pac Inc., as agent for EACL, on January 18, 2008.  The bill of lading states that the "Port of Loading" was "NEW YORK, NY." However, the HANJIN ELIZABETH loaded the container at issue in Port Elizabeth, New Jersey.

The automobiles at issue were delivered to a Container Freight Station operated by APA Logistics LLC and

---

[1] An NVOCC is "a common carrier that . . . does not operate the vessels by which the ocean transportation is provided" and "is a shipper in its relationship with [a vessel-operating] common carrier." 46 U.S.C. § 40102(16).

5

located in Elizabeth, New Jersey, and then "stuffed" into the container and thereafter drayed to the marine terminal at Port Elizabeth, New Jersey for the voyage to Korea. This is evidenced by the "Booking Confirmation" which Euro-Pac Inc., as EACL's agent in the Los Angeles area, received from FCC Logistics, the non-vessel operating common carrier that stood between EACL (through its agent Euro Pac Inc.) and the liner company, China Ocean Steamship Ltd. ("COSCO"), with respect to this shipment. Although the Booking Confirmation described the place of receipt and port of loading as "New York, NY," it states that the cargo was to be picked up at 545 Dowd Avenue, Elizabeth, NJ and delivered to Sea-land Services Berth 88 in Port Elizabeth, NJ. Thus, all physical handling of this shipment took place in New Jersey.

After discharge from the vessel at Busan in February 2008, the container was transported to a bonded warehouse operated by a third party, Perfect Service Logistics Co. Ltd. The container was to be held at the warehouse, pending surrender by the cargo receiver of the original, endorsed EACL bill of lading and payment of any outstanding charges due on the shipment. The cargo receiver was a company named "SB Motors." SB Motors

6

obtained delivery of the container without surrendering the original, endorsed Euro-America bill of lading, and the container is alleged by Salmassi to have been empty.

In the Defence, the Hong Kong solicitors contended that EACL was not liable for the loss because EACL had no control over the bonded warehouse from which SB Motors apparently obtained delivery of the automobiles and "[t]he Defendant, its servants and agents did not give any instructions to PSL custom bonded warehouse to release the cars without the production of the original Bill of Lading." They further contended that if any post-discharge contracts were made "with any other parties for the transport of the Container from the container yard to PSL custom bonded warehouse and storage of the Container and the cars, such contracts were made by the Defendant as the agents of the Plaintiff." Thus, pursuant to Clause 6(2) of EACL's bill of lading, EACL "as the agents of the Plaintiff [are] not liable for any loss whatsoever occurred after discharge of the Container and the cars from the Vessel at Busan, Korea."

Turning from liability defenses to limitation of liability, EACL further contended in the Defence filed with

7

the Court in Hong Kong that its liability, if any, was limited as follows:

    a. to $500 per container pursuant to Clause 6(1)(A) and Clause 6(4)(B) of the EACL bill of lading and the U.S. Carriage of Goods by Sea Act on the basis that the shipping container was either the package or the customary freight unit; or

    b. to $1,000 pursuant to Clause 6(1)(A) and Clause 6(4)(B) of the EACL bill of lading and the U.S. Carriage of Goods by Sea Act on the basis that "each of the cars inside the Container is considered as one package or customary freight unit"; or

    c. to £100 pursuant to Clause 6(1)(A) and Article 5 of the Hague Rules on the basis that under Article 5, liability for any loss or damage to or in connection with goods is limited to £100 per package or unit and "on the face of the Bill of Lading the Container should be considered as the relevant package or unit under Article 5 of the Hague Rules"; or

    d. to £200 pursuant to Clause 6(1)(A) and Article 5 of the Hague Rules on the basis that "each of the cars inside the Container is considered as one package or unit"; or

    e. finally, to $13,400 pursuant to Clause 6(3) of the EACL bill of lading if the carriage at issue is considered "combined transport", in which case EACL's liability, if any, "shall not exceed US$2 per kilo of the gross weight of the goods lost, damaged or in respect of which the claim arises" with the two automobiles having a gross weight of 6,000 kilos according to the bill of lading.

Unbeknownst to EACL, however, Salmassi filed this action in New York on May 28, 2008 and served the Summons, Complaint, Process of Maritime Attachment and Garnishment, and Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment in this action on EACL in Hong Kong in March 2009. Chan, a businessman and not a lawyer, explained his response to the instant action as follows:

> I was surprised to see that they involved the same claim that plaintiff was pursuing in the lawsuit it had filed in the High Court in Hong Kong. Upon closer inspection, I saw that plaintiff sought to attach property belonging to Euro-America in the Southern District of New York. I concluded that plaintiff had filed the lawsuit in New York to obtain security for the claim it was litigating in Court in Hong Kong. Otherwise, I could see no reason why plaintiff would have filed two virtually identical lawsuits on the same claim.
>
> * * *
>
> [I] was not aware that plaintiff could obtain a default judgment in New York when Euro-America had appeared in and was actively defending the lawsuit Plaintiff had filed on the same claim in Hong Kong. Had I known that plaintiff could obtain a default judgment in the New York lawsuit, I would have arranged for Euro-America to retain counsel and defend the lawsuit there.

(Chan Decl. ¶¶ 15, 17.)

9

## The Judgment Is Void for Lack of Jurisdiction

If a court rendering a default judgment lacked personal jurisdiction over the defendant, the judgment is "void." See, e.g., "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 123 (2d Cir. 2008); Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

In the Second Circuit "it is also well settled that voidness of a judgment for lack of personal jurisdiction can be asserted on a collateral challenge after entry of a default judgment." "R" Best Produce, 540 F.3d at 123.[2] This "well-settled" rule "applies even to a defendant, moving under Rule 60(b)(4), who received notice of the original lawsuit through service of process." Id.

---

[2] Such collateral challenges are permitted because the law recognizes that "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds." "R" Best Produce, 540 F.3d at 123 (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982)).

10

When the underlying judgment entered against the defaulting defendant is void, the court "is compelled to grant the motion [to vacate] for the reason that a void judgment cannot be enforced." Sartor v. Toussaint, No. 01-9194, 2002 WL 32127283, at *2 (2d Cir. Sept. 6, 2002) (quoting Wrobleski v. Morrissette, No. 96 Civ. 0182, 2000 WL 129184, at *1 (W.D.N.Y. Jan. 27, 2000)); see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 178 (2d Cir. 2004) ("[I]f the underlying judgment is void it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).").

To establish personal jurisdiction, Salmassi must show that EACL has minimum contacts with the forum state, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), and was properly served, Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). While EACL concedes it was properly served in Hong Kong in March 2009, it lacks the requisite minimum contacts with New York to subject it to personal jurisdiction in this case.

The shipment at issue did not originate in New York, but rather was loaded on the carrying vessel in Port

11

Elizabeth, New Jersey. EACL does not have an office, employees, bank account or other property in New York and merely arranges on an occasional basis for cargo shipments to be delivered in the state.

Salmassi has contended that the Port of New York and New Jersey is "one entity" and "one unitary arm of the Port Authority of New York and New Jersey," that it is immaterial whether the two cars at issue were actually loaded in Port Elizabeth, New Jersey, and that EACL nevertheless subjected itself to the personal jurisdiction of New York because it "utilized and sought the benefits and protections of the Port of New York, including its security, and berthing and docking facilities." (Opp. Br. 5-6.)

However, in Int'l Terminal Operating Co. v. Skibs A/S Hidlefjord, 63 F.R.D. 85 (S.D.N.Y. 1973), a stevedore brought an action in the Southern District of New York against Norwegian shipowners to recover compensation for contractual services performed while a ship was docked at Port Elizabeth, New Jersey. The stevedore based his personal jurisdiction claim on the same argument raised by

Plaintiff here, namely that "Port Elizabeth is within the 'Port of New York.'" Id. at 87.

The Court rejected the stevedore's proffered theory that work done in Port Elizabeth amounted to "transaction of business in New York," reasoning as follows:

> [T]he treaty governing the respective boundaries of New York and New Jersey, signed in 1833 and ratified by Congress in 1834, provides in relevant part:
>
> "The State of New Jersey shall have the exclusive jurisdiction of and over the wharves, docks and improvements, made and to be made on the shore of the said State, and of and over all vessels aground on said shore, or fastened to any such wharf or dock; except that the said vessels shall be subject to the quarantine or health laws, and laws in relation to passengers, of the State of New York, which now exist or which may hereafter be passed."
>
> Thus in the court's view there is no conceivable theory by which New York long-arm jurisdiction could be achieved.

Id. (citations omitted).

Salmassi argues that, "even if the cargo was ultimately loaded at the Port of Elizabeth, New Jersey, Defendant's purposeful activity directed at New York is sufficient to confer personal jurisdiction pursuant to CPLR 302(a)." (Opp. Br. 5.) To support this argument, Salmassi

13

cites APC Commodity Corp. v. Ram Dis Ticaret A.S., 965 F. Supp. 461 (S.D.N.Y. 1997), which held that "[j]urisdiction may exist [in New York] even when the goods are never shipped or supplied to New York. . . . The key issue is that the nondomiciliary contracted and intended to send good to New York." Id. at 465 (citations and quotations omitted). However, no evidence here establishes any intention to ship these goods through a marine terminal physically located in the State of New York. As a result, what the APC Commodity court identified as the "key issue" for application of New York C.P.L.R. § 302(a)(1) to the facts of this case is missing. See id.

The jurisdictional holding of Int'l Terminal Operating is therefore controlling on personal jurisdiction.

**The Application Was Timely and Appropriate**

Salmassi has contended that EACL failed to file its motion "within a reasonable time after it knew of the default judgment" because "EACL waited eight months to file . . . [its] motion." (Opp. Br. 7.) EACL did not learn of the default judgment in this action until November

14

12, 2009, when its agent, Euro Pac Ltd., received notice from counsel for the surety company that had issued an NVOCC bond required by the Federal Maritime Commission that Plaintiff was attempting to execute on that bond in satisfaction of the default judgment.

EACL filed its motion to vacate the default judgment within two and a half months of learning of it.

The Second Circuit has provided the following guidance with respect to the timeliness of a motion to vacate a default judgment under Rule 60(b)(4):

> Although Rule 60(b) provides that most motions for relief, including a motion under Rule 60(b)(4), must be made "within a reasonable time," this Court has been exceedingly lenient in defining the term "reasonable time," with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a default judgment as void "may be made at any time."

"R" Best Produce, 540 F.3d at 123-24 (quoting Beller & Keller v. Tyler, 120 F.3d 21, 24 (2d Cir. 1997)) (internal citation and footnote omitted). EACL's two and a half month delay falls within this Circuit's lenient definition of a "reasonable time" for filing a motion to vacate on grounds of voidness.

EACL's motion to vacate under Rule 60(b)(1) is also timely. The cases Plaintiff cites in support of its alleged "untimeliness" argument (Opp. Br. 7-8) all involved either substantial periods of delay or underlying factual circumstances far more egregious than those at issue here. See Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 336 (2d Cir. 1986) (delay of at least seven months); Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne De Navigation, 605 F.2d 648, 656 (2d Cir. 1979) (one year delay for which defendant "offer[ed] no explanation"); Westmark Dev. Corp. v. Century Surety Co., 199 F.R.D. 491, 497-98 (W.D.N.Y. 2001) (one day short of a full year from the date the default judgment was entered); Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 115 F. Supp. 2d 367, 370 (S.D.N.Y. 2000) (eleven month delay for which defendant "offered no justification"); Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 906 (6th Cir. 2006) (same).[3]

---

[3]   "R" Best Produce also distinguishes Days Inns, which Plaintiff cites for the proposition that EACL's delay in moving to vacate on personal jurisdiction grounds constituted waiver of any personal jurisdiction defense it might otherwise have possessed. (Opp. Br. 10.) However, the "R" Best Produce court held that personal jurisdiction over the Days Inns defendant not only had been validly obtained two days before entry of the default judgment therein, but defendant had also conceded at oral argument that he was amenable to the court's personal jurisdiction. "R" Best Produce, 540 F.3d at 124 n.7.

16

Salmassi asserts that, in considering the willfulness standard, "'confusion' is not sufficient good cause to set aside a default." (Opp. Br. 8.) However, in McVicker v. Donnelly, 95 F.R.D. 353, 355 (E.D. Pa. 1982), the court found that "confusion resulting from the time proximity and subject matter similarity of the two proceedings clearly demonstrate that defendant's failure to respond constitutes 'excusable neglect.'" Cf. Vann v. Fennell, No. 92 Civ. 0743E(F), 1994 WL 665386, at *1 (W.D.N.Y. Nov. 18, 1994) (finding attorney's "inadvertence and confusion" sufficient to set aside entry of default); Canfield v. VSH Rest. Corp., 162 F.R.D. 431, 434 (N.D.N.Y. 1995) (finding good cause for vacatur where default resulted from defendant's mistaken belief that second service did not amount to "formal service," but related merely to Plaintiff's prior request for waiver of service).

After receiving informal notice of this action from Yu in January 2009, EACL was confused because of Plaintiff's then-pending suit in Hong Kong (previously commenced in October 2008) involving identical claims and damages and for which EACL had already posted security in Hong Kong. The proximity in time and identical subject matter of the suits establish "excusable neglect" by EACL.

17

EACL has asserted a meritorious defense to this action based on the Hong Kong venue provision of EACL's bill of lading. In addition, Salmassi has not alleged that it will suffer any substantial prejudice from vacatur, further supporting EACL's motion and making the conditions to the vacatur required by Salmassi inappropriate.

**Conclusion**

Upon the facts and conclusions set forth above, the motion to vacate the Default Judgment is granted.

It is so ordered.

**New York, NY**
**May 27, 2010**

ROBERT W. SWEET
U.S.D.J.